**CASSADY A. ADAMS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT   59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT   59401**
**Phone:   (406) 761-7715**
**FAX:   (406) 453-9973**
**E-mail:    Cassady.Adams@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 19-57-GF-BMM** |
| **Plaintiff,** | |
| **vs.** | **BRIEF IN SUPPORT OF MOTION *IN LIMINE* CONCERNING POLYGRAPH EVIDENCE** |
| **JOSHUA JAMES BIRDRATTLER,** | |
| **Defendant.** | |

### INTRODUCTION

The United States of America, represented by Cassady A. Adams, Assistant

United States Attorney for the District of Montana, moves the Court *in limine* for

an order allowing the government to present testimony about the circumstances of the pre-polygraph examination conducted by Special Agent (SA) Smiedala and the F.B.I.'s policy about recording such examinations if the Court intends to give the cautionary instruction about the F.B.I.'s decision not to record the pre-polygraph examination.[1]

The Court has indicated that it intends to give a cautionary instruction if the recorded confession is played or if the United States presents testimony about the unrecorded portion of the interview. The United States understands the intent of this instruction is to address the Court's concern that the jury may place undue weight on recorded statements that do not reflect the complete interview that could have been, but was not, recorded. To address this concern and avoid the need for a cautionary instruction and testimony about the pre-polygraph examination, the United States is prepared to have the agents testify as to the confession only, without playing, or even acknowledging the existence of, the recording of that confession.

---

[1] The United States may also seek to present testimony about the circumstances of the polygraph examination at trial if the defense opens the door to the circumstances of the statements made by the defendant in the April 3, 2019 interview. In that case, it may be necessary for the United States to explain the context in which the defendant's interview occurred.

If the Court determines that even testimony regarding the confession necessitates a cautionary instruction, however, the United States requests a pre-trial ruling that agents be permitted to explain to the jury why the F.B.I. did not record the pre-polygraph portion of the interview. As the Ninth Circuit has made clear, testimony regarding the circumstances of a polygraph exam may be admissible where "it is relevant that a polygraph was given, regardless of the result. . . ." *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988). Although the United States still objects to a cautionary instruction, there is no basis for precluding the jury from learning the operative fact of the polygraph examination as it relates to the F.B.I.'s decision not to record a portion of the interview.

In support of the Motion, the United States submits the following brief.

## BACKGROUND

I.      **The defendant agrees to take a polygraph examination as part of sex assault investigation and ultimately admits to involuntary sexual conduct in a pre-polygraph interview.**

In February 2018, Jane Doe[2]  alleged that she had been sexually assaulted by the defendant on the Blackfeet Indian Reservation. Jane Doe alleged that the defendant had oral, vaginal, and anal sex with her against her will.

---

[2] The victim's name is not used in this brief due to protect her identity. Her name is disclosed to the defense in the discovery for this case.

On February 16, 2018, law enforcement interviewed the defendant at his mother's residence in Browning, Montana. The defendant initially admitted to drinking on the date in question and taking Jane Doe to his mother's apartment. He did not admit to any sexual conduct. Upon further questioning, the defendant acknowledged that he and Jane Doe had oral, vaginal, and anal sex. He insisted that the sex was consensual and consented to take a polygraph exam.

On April 3, 2019, the defendant drove himself from his place of work to the Federal Building in Browning, Montana for his scheduled polygraph exam. There, he met with FBI Special Agent Steve Snyder and was introduced to FBI Special Agent Stacey Smiedala, a polygraph examiner.

During the pre-polygraph interview, in the child advocacy center interview room, the defendant initially advised that he had not forced Jane Doe to have sex on the date in question. However, prior to any polygraph exam taking place, the defendant told SA Smiedala that although the sex with Jane Doe had started off consensually, Jane Doe requested that the defendant "go behind" her during sex. The defendant interpreted this comment to mean for him to begin anal sex. When the defendant began anal sex, Jane Doe told him, "That is enough." However, the defendant continued to have anal sex with Jane Doe. The defendant estimated that he continued to have sex with Jane Doe for fifteen seconds to one minute.

4

Upon the defendant's admission, SA Smiedala had the defendant provide a recorded statement about the events of the evening. After the defendant provided the statement, SA Smiedala realized that the recorder was not operating. SA Smiedala requested that the defendant provide the statement again. A recording of the statement was made at that point.

## II.   This Court holds a hearing on the defendant's suppression motion on October 8, 2019.

The defendant filed a motion to suppress his April 3, 2019 confession to SA Smiedala, alleging that it was involuntary. (Doc. 18-19). This Court held a hearing on the defendant's motion to suppress on October 8, 2019. (Doc. 33). At the suppression hearing, SA Stacey Smiedala, SA Steve Snyder, and the defendant testified about the circumstances of the polygraph interview on April 3, 2019. *Id.* Criminal Chief Joseph Thaggard also appeared at the hearing and answered questions from the Court concerning office policy on recording. *Id.*

## III.   This Court denies the defendant's motion to suppress but prescribes a cautionary jury instruction pertaining to the polygraph interview.

On November 12, 2019, this Court issued an order denying the defendant's motion to suppress. (Doc. 41). The Court also laid out circumstances in which a cautionary instruction would be given at trial:

> The totality of the circumstances likely will support a cautionary instruction in this case. *DiGiambattista*, 813 N.E.2d at 533. SA

Smiedala had available to him the technology to record the pre-polygraph interview, but he chose not to record it. Should the Government play the recorded portion of the interview or present testimony about the unrecorded portion of the interview at trial, the Court will instruct the jury to weigh that evidence with great caution. The Court further will instruct the jury that if they find the FBI could have recorded the interview—but chose not to record—the jury should "view with distrust" the recording and the testimony. *Deines*, 208 P.3d at 860-863.

*Id.* at 16.

## ISSUE

The United States seeks a pretrial ruling on the following issue:

Should the Court decided that a cautionary instruction is necessary even if the recording is not played or referenced during agent testimony regarding the April 3, 2019 interview, will the Court allow the government to provide testimony from agents about the reasons for not recording the pre-polygraph portion of the interview?

## ARGUMENT

I.      **The United States proposes a solution to alleviate the need for the cautionary instruction.**

The United States understands the Court's order about the cautionary instruction, (Doc. 41 at 16), to mean that the Court will give a cautionary instruction in the following two scenarios:

1.      If the United States plays the recorded portion of the interview; or

6

2.      If the United States presents testimony about the unrecorded portion of the interview.

The United States reads the sentence "The Court further will instruct the jury that if they find the FBI could have recorded the interview—but chose not to record—the jury should 'view with distrust' the recording and the testimony" (Doc. 41 at 16) to apply exclusively to the two above-listed scenarios.

The United States respects the Court's order in this case, and proposes the solution below to alleviate the need to give the cautionary instruction, as well as to alleviate the Court's concerns about testimony concerning the partial recording and unrecorded pre-polygraph interview.

Given the Court's order, the United States does not intend to affirmatively present either (1) the recorded portion of the interview or (2) testimony about the unrecorded portion of the interview, which are the two conditions that the Court has indicated would trigger the cautionary instruction. To avoid the need for a cautionary instruction and testimony about the pre-polygraph examination, the United States proposes to have the agents testify as to the confession only, without playing, or even acknowledging the existence of, the recording of that confession.

**II.    Testimony about the circumstances of the polygraph exam in this case is necessary if the Court intends to give the cautionary instruction.**

If the above solution does not alleviate the Court's concerns and the Court intends to give the cautionary instruction in connection with *any* testimony about the April 3, 2019 interview—including testimony outside of the two circumstances described above, in argument section I, *supra*—then it will be necessary for the United States to explain the context in which the defendant's interview occurred.

Therefore, the United States seeks a pretrial ruling from the Court that if a cautionary instruction will be given, the Court will allow the government to provide testimony from agents about the reasons for not recording the pre-polygraph portion of the interview.

The defendant's confession in this case is a necessary piece of evidence. Without an ability to present testimony about the circumstances of the interview, the United States will be placed in an untenable position if the Court gives an instruction that the testimony about the interview should be distrusted. The natural question in the jury's mind will be, "Why didn't the agent record the full interview?" The jury is entitled to an answer to that question. Special Agent Smiedala should be able to explain—subject to cross-examination—his reasons for not recording the full interview, namely, the fact that this was a polygraph exam and that he did not record it due to agency policy and the need to protect the

8

sensitive polygraph technique. Precluding such testimony is not justified by a limitation on testimony regarding polygraph *results*, as the Ninth Circuit has explained.

The Ninth Circuit has held that while polygraph evidence is not admissible to show the truth or falsity of polygraph results, evidence about a polygraph examination may be admissible to prove an operative fact. *Bowen*, 857 F.2d at 1341. *See also United States v. Campos*, 217 F.3d 707, 712 n.2 (9th Cir. 2000) ("Our holding does not have the effect of excluding all polygraph evidence, because polygraph evidence relating to collateral issues will continue to be potentially admissible."). The Ninth Circuit explained:

> The key to its admissibility as an operative fact is the purpose for which it is being introduced. If the polygraph evidence is being introduced because it is relevant that a polygraph was given, regardless of the result, then it may be admissible; or if the evidence is being introduced as a basis for a cause of action, then it may be admissible as well.

*Bowen*, 857 F.2d at 1341.

As noted in *United States v. Miller*, 874 F.2d 1255, 1261-62 (9th Cir. 1989), other circuits have also upheld the government's admission of testimony about polygraphs as an operative fact. *See, e.g., Tyler v. United States*, 193 F.2d 24 (D.C. Cir. 1951); *United States v. Kampiles*, 609 F.2d 1233 (7th Cir. 1979); *United States v. Johnson*, 816 F.2d 918, 923 (3d Cir. 1987).

In similar circumstances, in *United States v. Deputee*, 349 F. App'x 227, 228 (9th Cir. Oct. 26, 2009), the Ninth Circuit upheld a district court's decision to allow an F.B.I. polygraph examiner—Special Agent Stacey Smiedala—to testify that he intended to give the defendant (Deputee) a polygraph exam. This was proper after defense counsel, "on cross-examination of Smiedala, sought to raise negative inferences from Agent Smiedala's vague explanations for why his interview with Deputee took an hour and a half." *Id.*

Because this evidence would be offered to prove an operative fact—that the full interview on April 3, 2019 was not recorded because it was a polygraph interview—the Court need only conduct a balancing test under Fed. R. Evid. 403 to determine whether the probative value of the polygraph evidence outweighs its prejudicial impact. *Bowen*, 857 F.2d at 1341.

Certainly, any evidence admitted against the defendant could be prejudicial. However, when conducting a Rule 403 analysis, "prejudice outweighs probative value where the facts arouse the jury's feelings for one side without regard to the probative value of the evidence, or in other words, if the jury is basing its decision on something other than the established facts and legal propositions in the case." *Id.* (citation omitted). Unfair prejudice occurs from evidence that "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or

10

otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citation omitted).

If the Court intends to give the cautionary instruction, there is no unfair prejudice to the defendant from having the agents explain the context of the April 3, 2019 interview in this case. In particular, because the in-test phase of the polygraph examination was never conducted, there is no risk that the jury will consider the question of what the polygraph exam results might have been and thereby use that to assess the defendant's credibility. In this case, there are no polygraph exam results. *Contra Bowen*, 857 F.2d at 1341 (The court concluded that if the facts about an exam were admitted, the jury would be reasonably likely to infer that the defendant failed a polygraph); *Miller*, 874 F.2d at 1262 (Where the prosecution had effectively introduced a thorough account of the defendant's polygraph examinations, the admission of polygraph evidence "was not narrowly tailored to limit the prejudicial effect of such evidence").

Such a pretrial ruling also does not interfere with the defendant's ability to present a complete defense. *Cf. United States v. Alvirez*, 831 F.3d 1115, 1124-26 (9th Cir. 2016). The defendant is still able to cross-examine the witnesses for the United States, as well as present his own witnesses if he chooses to. Moreover, the

11

defense would be able to directly test the agents' judgment and credibility with respect to the decision on cross-examination, providing the jury exactly the kind of inquiry they need to assess the agents' testimony.

If the recorded statement is not admitted and if the agents do not testify about the unrecorded part of the interview, the United States does not believe the issue of which portions were or were not recorded would be relevant for the jury. However, if the Court intends to give the cautionary instruction concerning the April 3, 2019 interview under any circumstance, the United States would seek to admit testimony regarding the F.B.I.'s reasons for not recording pre-polygraph interviews so that the jury can understand the full context of the situation and weigh the evidence fairly.

## CONCLUSION

For the foregoing reasons, the United States seeks a pretrial ruling on the above-listed issue.

DATED this 26th day of November, 2019.

KURT G. ALME
United States Attorney

*/s/ Cassady A. Adams*
CASSADY A. ADAMS
Assistant U. S. Attorney

12

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 2,406 words.

RESPECTFULLY SUBMITTED this 26th day of November, 2019.

KURT G. ALME
United States Attorney

/s/ *Cassady A. Adams*
CASSADY A. ADAMS
Assistant U.S. Attorney

13